[No. B072409. Second Dist., Div. Four. Feb. 23, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL DeLEON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## COUNSEL

Honey Kessler Amado, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Kerrigan M. Keach, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—Daniel DeLeon challenges his conviction for robbery and assault, claiming error in the admission of his confession, insufficiency of evidence, sentencing error, and a due process violation in the "reasonable doubt" instruction. We find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

This case involved four separate incidents.

On the afternoon of July 11, 1992, an altercation arose between appellant and several individuals at the American Legion Hall in Whittier. Appellant grabbed Edmundo Garcia's shirt and the gold medallion hanging from a chain around his neck. When appellant reached for something from his pocket, Mr. Garcia pulled away from him. Appellant then moved toward Mario Gonzales and stabbed him with a knife.

At approximately 11:30 p.m. on July 15, 1992, Steven Paredes and his friend Andrew Gonzalez were sitting in Mr. Paredes's car watching a movie

at the Vineland Drive-In Theater in the City of Industry. Two men approached the driver's side of the car and asked Mr. Paredes for a cigarette. When Mr. Paredes turned to respond, one of the men pointed something at his neck and told him to leave the vehicle. The other person said, "Exit the vehicle unless you want to die." Mr. Paredes hesitated and was pulled from the car. One of the men went to the passenger side of the vehicle and asked Mr. Gonzalez if he wanted to die. Mr. Gonzalez got out of the car. The two men then entered the car and drove away.

Just after midnight that same night, appellant entered the Circle M Market in La Mirada and yelled, "This is a robbery. Give me everybody [sic] you got." Appellant walked around the counter toward the cash register with a gun pointed in the air and demanded money. He shot a hole in the ceiling of the market. The clerk opened the cash register. Appellant reached in and removed approximately $80. A video camera in the store recorded the incident.

About 15 minutes later, a male with a shotgun entered a 7-Eleven convenience store in Brea. He fired the shotgun three times, walked up to the clerk and demanded that he open the cash register. The clerk did so and the man removed approximately $100.

Appellant was arrested in Buena Park in late July 1992 for an armed robbery which took place in Orange County. While in custody, he invoked his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Officers of the Los Angeles County Sheriff's Department arrested appellant for the American Legion assault incident, and assumed custody from the Buena Park Police Department on August 3, 1992. He was again advised of his *Miranda* rights, and waived them. Detective Esquerra of the Los Angeles County Sheriff's Department then told appellant that while he had been arrested for the American Legion assault incident, they also suspected he was involved in two armed robberies. After they told appellant he had been seen on video film, he admitted committing the armed robberies at the Circle M Market and the 7-Eleven store.

Appellant was charged by information in count 1 with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), with an allegation that he personally inflicted great bodily injury upon the victim; and in counts 2, 3, and 4 with second degree robbery (Pen. Code, § 211) with allegations that in counts 3 and 4 he personally used a gun during commission of the offense. Appellant was found guilty as charged, and appeals from the judgment of conviction.

## DISCUSSION

## I

### *Admissibility of Confessions*

■ Appellant argues that evidence of his confession was inadmissible because his statement to Detective Esquerra was obtained after he had invoked his *Miranda* rights while in custody in Buena Park. We find no impropriety in the subsequent questioning by Detective Esquerra, and hence no error in the admission of the confession.

In *Miranda* v. *Arizona, supra,* 384 U.S. 436, the United States Supreme Court promulgated standards to safeguard the right against compelled self-incrimination guaranteed by the Fifth and Fourteenth Amendments. Before a person in custody may be questioned by police, he must be informed that he has the right to remain silent, that any statement he makes may be used against him, and that he has the right to the presence of an attorney, either retained or appointed. (*Id.* at p. 444 [16 L.Ed.2d at p. 706].) "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (*Id.* at p. 473-474 [16 L.Ed.2d at p. 723].) "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." (*Id.* at p. 474 [16 L.Ed.2d at p. 723].)

■ *Miranda* delineates two separate rights—the right to remain silent, and the right to have counsel present during interrogation. Later cases make clear that there are distinctions in the scope of these rights. In *Michigan* v. *Mosley* (1975) 423 U.S. 96 [46 L.Ed.2d 313, 96 S.Ct. 321], the court held that *Miranda* does not create a "proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." (*Id.* at pp. 102-103 [46 L.Ed.2d at p. 321].) It is the suspect's "right to cut off questioning" that *Miranda* identified as crucial. (*Id.* at p. 105 [46 L.Ed.2d at p. 322].) Hence, ". . . the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" (423 U.S. at p. 104 [46 L.Ed.2d at p. 321].)

The court recognized that *Miranda* afforded different treatment to the right to remain silent and the right to counsel, and expressly rejected the view that when a suspect invokes the right to remain silent, questioning on another crime is prohibited unless counsel is present. (*Michigan v. Mosley, supra,* 423 U.S. at p. 104, fn. 10 [46 L.Ed.2d at p. 321].) Under *Miranda,* it is only when the suspect states that he or she wants an attorney that all interrogation must cease until an attorney is present. (*Ibid.*)

The broader protection afforded a suspect who invokes the right to counsel rather than just the right to remain silent was emphasized by the Supreme Court in *Edwards* v. *Arizona* (1980) 451 U.S. 477 [68 L.Ed.2d 378, 101 S.Ct. 1880]. After noting the distinctions between the safeguards for the two separate rights discussed in the *Mosley* opinion, the court reconfirmed that ". . . it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." (*Id.* at p. 485 [68 L.Ed.2d at p. 387].)

*Edwards's* proscription against initiation of further interrogation in the absence of counsel is not offense specific. Once a suspect invokes the *Miranda* right to counsel, he or she may not be reapproached regarding *any* offense unless counsel is present. (*Arizona* v. *Roberson* (1988) 486 U.S. 675, 681-682 [100 L.Ed.2d 704, 713-714, 108 S.Ct. 2093].)

Invoking independent state grounds, the California Supreme Court declined to follow *Mosley,* holding in *People* v. *Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108] that a criminal defendant has broader protection of the right against self-incrimination under the state Constitution than under the federal Constitution. Under *Pettingill,* once a suspect in custody has invoked the *Miranda* right to remain silent, any police-initiated interrogation violates the suspect's privilege against self-incrimination under the California Constitution. (*Id.* at p. 251; see also *People* v. *Fioritto* (1968) 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625].) ▪ The *Pettingill* rule was abrogated by Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), and the federal constitutional standard of *Michigan* v. *Mosley, supra,* 423 U.S. 96 is now the sole determinant of admissibility where a defendant is reinterrogated after invoking the *Miranda* right to remain silent. (See *People* v. *Warner* (1988) 203 Cal.App.3d 1122, 1127-1129 [250 Cal.Rptr. 462].)

Mindful of the different protection provided to a suspect depending on whether he or she invokes the right to counsel or merely the right to remain silent, we turn to the evidence before the court in this case. At an Evidence Code section 402 hearing to exclude the confession, Detective Esquerra testified that appellant had been arrested on or about July 29, 1992, by

Buena Park Police Detectives for armed robbery of a white Chevrolet Camaro. Detective Roman of the Los Angeles County Sheriff's Department arrested appellant from the Buena Park Police Department on August 3, 1992, in connection with a July 11 stabbing at the American Legion Hall.

Detective Esquerra, who was the investigating officer for the sheriff's Department in the American Legion case, received and read a copy of the Buena Park Police report before he interviewed appellant on August 3. At the time he interviewed appellant, he knew appellant "had invoked his Miranda rights in Buena Park." The prosecutor asked: "Detective Esquerra, your knowledge from your information that you received either orally or in writing that Mr. De Leon *invoked his rights not to talk* was at the Buena Park case itself?" (Italics added.) Esquerra replied: "That's correct. I knew from conversations with Detective Carter who did most of the communication with Detective Buchanan that the line of questioning was limited to their arm [*sic*] robbery in their city." The prosecutor inquired: "Mr. DeLeon as far as you know never invoked his Miranda rights in regards to the Los Angeles cases, Vineland Drive-In, the American Legion case, the Circle M Orange County 7-Eleven Store; is that right?" Esquerra replied: "Correct." There is no other evidence regarding the scope of the rights appellant invoked in Buena Park.

■ Invocation of the *Miranda* right to counsel, with the greater protection afforded by *Edwards*, "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." (*McNeil* v. *Wisconsin* (1991) 501 U.S. 171, 178 [115 L.Ed.2d 158, 169, 111 S.Ct. 2204, 2209], italics omitted.) "Without a clear and express invocation of the Fifth Amendment's right to counsel, the *Edwards-Roberson* doctrine does not operate to bar *any and all* contact by state officers with the suspect." (*People* v. *Lispier* (1992) 4 Cal.App.4th 1317, 1323-1324 [6 Cal.Rptr.2d 639], original italics.) The record in this case contains no evidence that appellant expressly invoked his right to counsel in Buena Park. Until and unless a suspect affirmatively invokes the *Miranda* right to counsel during interrogation, the less stringent rule of *Mosley* applies. (*Ibid.*) Applying that rule to our case, we find no violation of appellant's rights.

In *Michigan* v. *Mosley, supra*, the suspect was properly advised of his *Miranda* rights, and upon his statement that he did not want to discuss certain robberies, the initial questioning ceased. In our case, after appellant received *Miranda* warnings in Buena Park, he "invoked his rights not to talk" about the Buena Park case, and his right to cut off questioning was honored by the Buena Park police. Neither the suspect in *Mosley* nor the

appellant in this case ever indicated a desire to consult with an attorney. (423 U.S. at p. 97 [46 L.Ed.2d at pp. 317-318].) After more than two hours, the suspect in *Mosley* was again advised of his *Miranda* rights, and was then questioned by another police officer at another location about an unrelated holdup murder. (*Id.* at p. 104 [46 L.Ed.2d at p. 321].) In our case, five days elapsed between appellant's invocation of his right to remain silent in Buena Park and his subsequent questioning by the Los Angeles sheriffs, and the later interview involved crimes other than the Buena Park armed robbery.

The court in *Mosley* noted that it was not a case "where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." (*Michigan* v. *Mosley*, *supra*, 423 U.S. at pp. 105-106 [46 L.Ed.2d at p. 322].) On these facts, the court found no violation of the suspect's right under *Miranda* to cut off questioning. The same factors yield the same conclusion in this case. Appellant's *Miranda* rights were not violated, and his confession was properly admitted.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Hastings, J., and Klein, J.,† concurred.

A petition for a rehearing was denied March 11, 1994, and appellant's petition for review by the Supreme Court was denied May 26, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

*See footnote, *ante*, page 1265.
†Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.