[No. G022297. Fourth Dist., Div. Three. Sept. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
GAMALIEL AVILA, Defendant and Appellant.

COUNSEL

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl Horst and Craig S. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Gamaliel Avila was charged with attempted murder and related offenses[1] arising from a December 1996 shooting. While in custody following his arraignment, he confessed to an unrelated attack on a rival gang which occurred in November 1996. The prosecution responded by amending the original complaint to include charges from the earlier incident.[2] A jury found Avila guilty of all counts except the attempted murder.

On appeal, Avila asserts his statement regarding the November 1996 assault was taken in violation of his *Miranda* "right to counsel" and should have been suppressed. Based on the holdings of *Miranda*[3] and its progeny, the prophylactic "right to counsel" stemming from the Fifth Amendment can be validly invoked by the suspect only when he is both in custody and under either the threat or influence of interrogation. Since Avila's *Miranda* rights were invoked long before the custodial interrogation resulting in his statement, his assertion was anticipatory and thus, meaningless.

Additionally, Avila contends a clerical error occurred in the abstract of judgment. As the Attorney General concedes the clerical error, the abstract of judgment must be modified to reflect the correct sentence of 18 years which was ordered by the court. Judgment affirmed as modified.

I

*Facts*

In December 1996, police detective Brent Craft interviewed Avila, an admitted member of the Orange Krazy Malditos (OKM) gang, regarding a shooting incident that occurred the night before in which a woman was injured. Avila waived his *Miranda* rights and admitted he shot at the car but only intended to scare its occupants. A day later, Avila was arraigned on charges of attempted murder, shooting at an occupied motor vehicle and assault with a semiautomatic firearm.

---

[1]The charges, in addition to the attempted, premeditated murder (Pen. Code, §§ 664, 187), were assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)), street terrorism (Pen. Code, § 186.22, subd. (b)), with the attached enhancements that the offenses were committed with a firearm (Pen. Code, § 12022.5, subd. (a)) and were done to benefit a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)). All further section references are to the Penal Code.

[2]The new charges were one count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)) and another count of street terrorism (§ 186.22, subd. (a)).

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

The court appointed a public defender to represent Avila who tendered a written document invoking Avila's rights under the Fifth, Sixth and Fourteenth Amendments.[4] Additionally, the clerk's minute order for that date displayed a stamp reading, "Defendant invokes the right to counsel and the right to remain silent."

A week after the filing of this form and while Avila was still in custody, Craft interviewed him again, regarding a separate, unrelated gang incident which took place on November 6, 1996. Avila did not ask to have his attorney present; moreover, he waived the *Miranda* rights *again* following Craft's recitation of them. Avila admitted that he, along with his OKM gang, were involved in the attack on Lloyd Madayag, a member of a rival gang.

The district attorney amended the complaint on January 24, 1997, to include counts arising from the November attack. At the jury trial, Avila was found not guilty of attempted murder but guilty of the lesser offense, shooting at an occupied motor vehicle, and all other counts and allegations. Avila was sentenced to 18 years.

## II

### Discussion

■ Avila argues the police were prohibited from questioning him about *any* matter once his Fifth Amendment rights to counsel and against self-incrimination were invoked by his attorney at the arraignment. Avila contends his confession to Craft regarding the November 1996 assault should have been suppressed because it was taken after the invocation, in violation of what he refers to as his Fifth Amendment right to counsel.[5]

■ We note at the outset that a person's Fifth Amendment right to remain silent is a *personal* one; it cannot be vicariously asserted by counsel. (*United States* v. *Nobles* (1975) 422 U.S. 225, 233 [95 S.Ct. 2160, 2167-2168, 45 L.Ed.2d 141]; see also *Moran* v. *Burbine* (1986) 475 U.S. 412 [106

---

[4]The written invocation states, in its entirety, "The above named defendant (personally and/or through counsel) hereby invokes his/her right to counsel, including the right to have counsel present, the right to remain silent, and the privilege against self-incrimination, as to this case and any other matter whether or not a complaint has been filed therein, as provided under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, section 15, of the California Constitution. This invocation includes, but is not limited to, all of the rights available under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974], and *Edwards* v. *Arizona* (1981) 451 U.S. 477 [101 S.Ct. 1880, 68 L.Ed.2d 378], including, but not limited to the Fifth Amendment right to counsel."

[5]Avila does not assert any Fifth or Sixth Amendment violations concerning the first statement taken in December 1996.

S.Ct. 1135, 89 L.Ed.2d 410]; *Fuentes* v. *Moran* (D.R.I. 1983) 572 F.Supp. 1461, 1469.) It is jurisprudentially untenable that an indirect protection of the right to remain silent—the *Miranda* right to counsel—can be vicariously invoked when the actual right cannot be. As we will set out, it cannot.

Prior to the passage of Proposition 8, the California Supreme Court regularly ruled the state's constitutional protections were broader than those founded on the federal constitutional rights protecting criminal defendants. As our Supreme Court explained in *People* v. *Hannon* (1977) 19 Cal.3d 588, 606 [138 Cal.Rptr. 885, 564 P.2d 1203], " '[O]ur first referent is California law and the full panoply of rights Californians have come to expect as their due. . . . [D]ecisions of the United States Supreme Court defining fundamental civil rights are persuasive authority to be afforded respectful consideration . . . .' " In this paradigm, *People* v. *Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108] was decided, reaffirming that any interrogation initiated by police officers after a defendant's invocation of any *Miranda* right is a constitutional violation. (*Id.* at pp. 238-241, 251.)

Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), however, abrogated the *Pettingill* rule, compelling California courts to apply only federal rules for exclusion of evidence under *Miranda*. (*People* v. *Montano* (1991) 226 Cal.App.3d 914, 930 [277 Cal.Rptr. 327]; *People* v. *Warner* (1988) 203 Cal.App.3d 1122, 1126 [250 Cal.Rptr. 462].) Thus, the issue before us anew is whether under *Miranda* v. *Arizona, supra,* 384 U.S. 436, an accused in custody on one charge can invoke his or her *Miranda* rights *as to some other unrelated charge* by a written "invocation of rights" form at an arraignment on the original charge. Based on the cases defining and clarifying *Miranda,* particularly the opinion of *McNeil* v. *Wisconsin* (1991) 501 U.S. 171 [111 S.Ct. 2204, 115 L.Ed.2d 158], we answer that question in the negative.

In *Miranda,* the court sought to address the perils of custodial interrogation and "the evils it can bring." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 456 [86 S.Ct. at p. 1618].) The court's holding provided procedural safeguards to protect an accused's privilege against self-incrimination, specifically the right to remain silent and the right to consult with an attorney, while in custody. (*Id.* at pp. 478-479 [86 S.Ct. at pp. 1629-1631].) The court noted the "inherently compelling pressures" arising from custodial interrogation acting to "undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (*Id.* at p. 467 [86 S.Ct. at p. 1624].)

In *Miranda,* the court sought to protect an accused's privilege against self-incrimination under the Fifth Amendment by incorporating certain

aspects of the right to counsel into its crafted resolution to the problem of custodial interrogation. Under *Edwards* v. *Arizona* (1981) 451 U.S. 477, 484-485 [101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378], if *Miranda* rights are invoked by the suspect during custodial interrogation, police are precluded from *any* further discussion with an accused in custody unless he or she voluntarily approaches the police and initiates a discussion. In *Arizona* v. *Roberson* (1988) 486 U.S. 675, 687-688 [108 S.Ct. 2093, 2101-2102, 100 L.Ed.2d 704], the court extended the rule articulated in *Edwards* to prohibit custodial interrogation concerning *all* investigations, making an invocation of a suspect's *Miranda* rights non-offense specific.[6]

However, the latest statement on the related, but *unconnected*,[7] Sixth Amendment right to counsel has diverged from such a broad interpretation. In *McNeil* v. *Wisconsin, supra,* 501 U.S. 171, it was established the invocation of the Sixth Amendment's right to counsel does not trigger the Fifth Amendment's corollary right to counsel under *Miranda*. (*McNeil* v. *Wisconsin, supra,* 501 U.S. at pp. 173, 182 [111 S.Ct. at pp. 2206, 2211].) A footnote in the majority's decision stated, "[w]e have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'—which a preliminary hearing will not always, or even usually, involve. . . . Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect. Assuming, however, that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle." (*Id.* at p. 182, fn. 3 [111 S.Ct. at p. 2211].)

---

[6]"[[T]he Fifth Amendment right against self-incrimination] is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges." (*Arizona* v. *Roberson, supra,* 486 U.S. at p. 685 [108 S.Ct. at p. 2100].) "[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he clearly asserted his right to counsel." (*Edwards* v. *Arizona, supra,* 451 U.S. at. p. 485 [101 S.Ct. at p. 1885].)

[7]We previously expressed the need to appreciate the distinction between the Sixth Amendment's right to counsel and that created to implement the Fifth Amendment's privilege against self-incrimination under *Miranda*. In *People* v. *Lispier* (1992) 4 Cal.App.4th 1317, 1325 [6 Cal.Rptr.2d 639], we stated ". . . the right to counsel under the Sixth Amendment is inherently and definitively different from that created under the Fifth Amendment and *Miranda*. [Citation.] They are not and cannot be interchangeable. . . . [¶] Just because a criminal defendant invokes his Sixth Amendment right to counsel, it does not mean he is simultaneously invoking his Fifth Amendment right on a separate case. . . ."

This language, when coupled with the court's consistency in holding that an invocation of the *Miranda* right to counsel must occur at the time of the custodial interrogation, undermines any attempt to assert the *Miranda* right to counsel at an arraignment. Such an act is ineffective to preclude officers from initiating a separate interrogation of the accused regarding unrelated crimes. Simply stated, the *Miranda* rights cannot be invoked except during the custodial interrogation against which they are being asserted.[8] (*Rhode Island* v. *Innis* (1980) 446 U.S. 291, 300-301 [100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297].) "The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that [the accused] invoked . . . ." (*Edwards* v. *Arizona, supra,* 451 U.S. at pp. 485-486 [101 S.Ct. at p. 1885].)

In the present case, defense counsel purported to invoke both Avila's right to counsel under the Sixth Amendment and his *Miranda* right to counsel, in an attempt to preclude the police from contacting Avila about *any* offense in the future. Although Avila's invocation was made while he was in custody at the arraignment, he was neither facing nor fearing interrogation. The state formally charged Avila with the offenses arising from the December 1996 incident at the arraignment; nothing more. Based on the clerk's minute order, he was charged with three criminal offenses and awarded appointed counsel, who then served the prosecution with an informal motion for discovery and the document purportedly invoking Avila's Fifth and Sixth

---

[8]Several federal circuit courts have decided whether the *Miranda* right to counsel can be invoked outside of custodial interrogation. In *U. S.* v. *Grimes* (11th Cir. 1998) 142 F.3d 1342, the court held the claim of rights form signed by the defendant, attempting to assert his right to counsel and right to remain silent under the Fifth and Sixth Amendments, was ineffective to invoke his *Miranda* right to counsel because the *Miranda* rights could only be invoked when interrogation is imminent or during custodial interrogation. (*Id.* at pp. 1347-1348.) The court held in *U. S.* v. *LaGrone* (7th Cir. 1994) 43 F.3d 332, that "in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent." (*Id.* at p. 339.) In *Alston* v. *Redman* (3d Cir. 1994) 34 F.3d 1237, the court held the "putative invocation of his right to counsel . . . was made while he was sitting in his jail cell speaking with a representative of the Public Defender's office, far removed from the strictures of custodial interrogation feared by the *Miranda* Court. . . . [T]he petitioner's *Miranda* right to counsel had simply not attached when petitioner signed the invocation form in his cell." (*Id.* at p. 1245.) Also, in *U. S.* v. *Wright* (9th Cir. 1992) 962 F.2d 953, the court held defense counsel's request to be present at subsequent interviews of the defendant at the plea proceeding was insufficient to invoke the *Miranda* right to counsel for custodial interrogation concerning separate investigations. (*Id.* at p. 954.) Additionally, the Supreme Court of Florida addressed the validity of the use of a "claim of rights" form signed by a defendant, outside the context of interrogation, to invoke the *Miranda* right to counsel. Citing *McNeil* v. *Wisconsin,* that court held that the form was inadequate under federal law to implicate the defendant's *Miranda* right to counsel because the form was signed outside the context of interrogation and one week prior to police questioning. (See *Sapp* v. *State* (Fla. 1997) 690 So.2d 581, 583-585.)

Amendment rights. Bail was set at $200,000, and Avila waived his right to have a preliminary hearing within 10 court days. None of the coercive aspects of custodial interrogation were present or foreshadowed at the time of the purported invocation. In fact, Avila was not approached until a week later. When Craft visited Avila, he advised him of his *Miranda* rights at the outset, and Avila did not request counsel, did not object to the discussion, and knowingly waived his rights, admitting his involvement in the November assault.

For policy reasons, the use of such a form[9] may serve more harm than good. Allowing an anticipatory invocation of the *Miranda* right to counsel would extend an accused's privilege against self-incrimination far beyond the intent of *Miranda* and its progeny. "The extraordinary protections afforded a person in custody suspected of criminal conduct are not without a valid basis, but as with all 'good' things they can be carried too far." (*Edwards* v. *Arizona, supra,* 451 U.S. at pp. 487-488 [101 S.Ct. at p. 1886] (conc. opn. of Burger, J.).) The form, if valid, would unduly hinder effective law enforcement by placing an unjustifiable burden on police. "[M]ost persons in pretrial custody for serious offenses would be unapproachable by police officers suspecting them of involvement in other crimes, *even though they have never expressed any unwillingness to be questioned.* Since the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser. Admissions of guilt resulting from valid *Miranda* waivers 'are more than merely "desirable"; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law.' [Citation.]" (*McNeil* v. *Wisconsin, supra,* 501 U.S. at pp. 180-181 [111 S.Ct. at p. 2210], fn. & some italics omitted.)

The form, if invalid, is insidious. It exists only to mislead the uninformed suspect into believing that certain rights had attached when they had not. The invocation form can provide notice to police that the accused has appointed counsel and should not be interrogated on the charges for which he has been arraigned. But once counsel is appointed at arraignment on the charges, the Sixth Amendment right to counsel *automatically* attaches (*Massiah* v. *United States* (1964) 377 U.S. 201, 205 [84 S.Ct. 1199, 1202-1203, 12 L.Ed.2d 246]), and written notice is unnecessary because "Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. . . . One set of state actors (the police) may not claim

---

[9]The use of the "invocation of right" forms by appointed counsel in Orange County appears to be widespread. Upon appointment, it appears common practice for such counsel to have their clients sign these forms and then assert their clients' right to counsel under the Fifth and Sixth Amendment during arraignment. Common use of these forms is evinced by the "rubber stamp" found on the clerk's minute order stating, "Defendant invokes the right to counsel and the right to remain silent."

ignorance of defendants' unequivocal request for counsel to another state actor (the court)." (*Michigan* v. *Jackson* (1986) 475 U.S. 625, 634 [106 S.Ct. 1404, 1410, 89 L.Ed.2d 631], fn. omitted.)

No sound reason exists for the use of such a form. It would be more effective and considerate for appointed counsel to remind the accused not to volunteer any statements to police and to request the attorney's presence *if and when* interrogation is attempted.

## III

A clerical error occurred in the abstract of judgment which should reflect the total term of imprisonment to be 18 years, which was the amount ordered by the court. The Attorney General concedes the error was clerical and should be corrected to read consistently with the trial court's sentence. Pursuant to *People* v. *McGee* (1991) 232 Cal.App.3d 620 [283 Cal.Rptr. 528], we order the abstract of judgment modified to reflect the actual sentence imposed by the sentencing court: 18 years. Upon modification, the judgment is affirmed.

Rylaarsdam, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied October 13, 1999, and appellant's petition for review by the Supreme Court was denied January 13, 2000.