Filed 3/3/14  P. v. Buggs CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCEL BUGGS,<br><br>        Defendant and Appellant. | A133989<br><br>(Contra Costa County<br>Super. Ct. No. 51004217) |

## I.

## INTRODUCTION

A jury convicted appellant Marcel Buggs of three counts of attempted murder with premeditation and deliberation (Pen. Code, §§ 187, subd. (a), 664, subd. (a))[1]; second degree commercial burglary (§§ 459, 460, subd. (b)); and street terrorism (§ 186.22, subd. (a)).  The jury also found true firearm use allegations (§ 12022.5, subd. (a)(1)), street gang allegations (§ 186.22, subd. (a), and allegations of personal infliction of great bodily injury (§ 12022.7, subd. (a)), and great bodily injury (§ 12022.53, subds. (b),(c)).

On appeal, appellant claims the court erred in instructing the jury on how to consider the testimony of an accomplice.  Specifically, appellant claims the court erred: (1) in failing to instruct the jury sua sponte with CALJIC No. 3.18, which instructs the jury that the testimony of an accomplice should be viewed with mistrust; and (2) in giving the jury CALJIC No. 2.11.5, which instructs the jury not to speculate on why a

---

[1] All undesignated statutory references are to the Penal Code.

1

possible accomplice of the defendant is not being prosecuted in the current trial. We conclude any instructional error was harmless. Appellant also contends, and the Attorney General concedes, that the abstract of judgment should be corrected to reflect that the $1,000 parole revocation fine was stayed. We modify the judgment to show the $1,000 parole revocation fine was stayed. In all other respects, the judgment is affirmed.

## II.

## FACTS AND PROCEDURAL HISTORY

Around noon on Valentine's Day, February 14, 2010, appellant entered the New Gethsemane Church of God in Christ in Richmond (the church) with two other young men during Sunday services. They walked up the center aisle looking from side to side at the parishioners before leaving the church. Appellant returned a few minutes later carrying a gun. He fired five shots at Marjuan Crenshaw and two of his brothers, Deandre Johnson and Darvone Crenshaw, wounding Deandre and Darvone.

The evidence at trial established appellant was a member of a South Richmond criminal street gang. The victims lived in a different part of Richmond and were associated with a rival gang. A YouTube video was recorded shortly before the shooting in which appellant, an aspiring rap artist, along with his fellow gang members, waved a gun and rapped about inflicting violence on people from North Richmond. The YouTube video was played for the jury at trial.

As appellant states, "every apparently percipient witness changed his or her story at some point in the proceedings," with many of the testifying eyewitnesses at appellant's trial recanting their out-of-court identifications of appellant as the shooter. However, on appeal from a criminal conviction, we are entitled to view the evidence in the light most favorable to the prosecution. (*People v. Sweeney* (1960) 55 Cal.2d 27, 33; *People v. Caritativo* (1956) 46 Cal.2d 68, 70; *People v. Dail* (1943) 22 Cal.2d 642, 650.) So viewed, we recount the eyewitness testimony.

The primary witness against appellant was one of the shooting victims, 16-year-old Deandre Johnson. Deandre testified before the grand jury that appellant, Raymond Smith, and Michael Amos walked up the center aisle of the church, turned around, and

walked back out. He said that appellant returned with a gun and fired five shots. Deandre identified appellant by name to the responding officers at the church and when he spoke with the police at the Richmond Police Department shortly after the shooting.

Rosalind Johnson, the victims' mother, testified at trial that she saw three men walk up the center aisle of church, with one of the three men brushing up against her as he walked up the aisle. She watched the gunman come back into church with a black gun in his hand. She testified before the grand jury that she was 80 percent certain that appellant was the gunman.

Danquell Bethancourt testified she followed the three men out of the church because her son was outside and she "felt that something strange was going on." She saw appellant being handed a gun. She followed appellant into the church and saw him fire the gun. Bethancourt subsequently identified appellant's photograph for the grand jury and indicated she was 100 percent certain he was the shooter. She recognized appellant from the Richmond Townhomes, and she testified he was friends with one of her cousins.

Before the grand jury, Karmeisha Wilson, a woman who attended services at the church on the day of the shooting, told police appellant was the shooter, and she identified appellant's photograph as the gunman. She said that she was positive of the identification.

Appellant, who was 19 years old at the time of trial, testified on his own behalf. He admitted lying to the police when he said he was not at the church on the day of the shooting.[2] He testified he received a call from his friends asking him to meet them at the church, but the call was dropped before he could find out why. He testified he arrived at the church as everyone was leaving. He said that people exiting the church looked around suspiciously. He denied hearing gunshots. He denied being the gunman. He

---

[2] Appellant initially told the police that he was having lunch with his mother at the time of the shooting. However, his defense changed to mistaken identity after evidence of cell phone activity placed appellant in the vicinity of the church during the critical time.

denied belonging to a gang. He claimed he just took off running to get away from whatever had happened.

The defense theory of the case was mistaken identity. In closing argument, defense counsel told the jury appellant "was there, but he wasn't the shooter, and he had nothing to do with what was going on in that church." Defense counsel claimed appellant "was there at the wrong time, wrong place, got mistaken for the shooter."

After the jury returned its verdict convicting appellant on all counts and finding all the allegations true, the trial court sentenced appellant to 40 years to life in state prison. At the sentencing hearing, the trial court observed "the crimes that the defendant committed were outrageous, shocking and demonstrated a wanton disregard for human life. [¶] To walk into a crowded church in the middle of ceremonies and fire rounds into a crowded pew full of dozens of people . . . demonstrates . . . a callous disregard for human life and for killing innocent people."

## III.

## DISCUSSION

### A. Michael Bracy's Testimony

Both claims of instructional error in this appeal involve the jury's consideration of Michael Bracy's testimony, a witness who the Attorney General concedes could be viewed by the jury as an aider and abettor in the crimes committed. Consequently, we set out a summary of 16-year-old Bracy's testimony, which the jury was told was given pursuant to a grant of use immunity. Bracy was in attendance at the 2010 Valentine's Day services at the church. He was affiliated with the same street gang as appellant, and he admitted "throwing" gang hand signs with appellant in the YouTube video. After seeing the victims in the church, Bracy communicated by cell phone with his fellow gang member, Raymond Smith. Bracy informed Smith that rival gang members were in attendance at the church. Bracy knew there was a "little beef" among people from different parts of Richmond. As the Attorney General concedes "[h]ere, arguably the evidence was sufficient to permit the inference that Bracy intended to assist Smith and his

4

cohorts in identifying the location of Marjuan and his brothers, with whom they had an ongoing rivalry."

### B. Failure to Give CALJIC No. 3.18

Appellant first contends his convictions must be reversed because Bracy was an accomplice, but the trial court failed to properly instruct the jury sua sponte on how to evaluate his testimony as set forth in CALJIC No. 3.18.

If, as here, there is evidence from which the jury could find a witness to be an accomplice, the court must sua sponte instruct the jury in the language of CALJIC No. 3.18. (*People v. Lewis* (2001) 26 Cal.4th 334, 369 (*Lewis*).) This instruction informs the jury that if it finds the witness is an accomplice, the witness's testimony should be viewed with distrust and the accomplice's testimony must be corroborated. (*People v. Zapien* (1993) 4 Cal.4th 929, 982 (*Zapien*).) The cautionary instruction is required because an accomplice may try to shift the blame in an effort to minimize his or her own culpability. (See *People v. Tobias* (2001) 25 Cal.4th 327, 331.) We assume without deciding that it was error to not give CALJIC No. 3.18 in this case.

While appellant urges our standard of review of this error is the "harmless beyond a reasonable doubt" standard prescribed by *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), our Supreme Court has spoken on the standard of prejudice for the erroneous failure to give CALJIC No. 3.18, and has evaluated the error under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 837. (*Lewis*, *supra*, 26 Cal.4th at p. 371.) Of course, we are constrained to follow our Supreme Court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 454-457.)

In *Lewis,* the court analyzed the failure to give CALJIC No. 3.18 and found the error was harmless. The court explained, "[t]o the extent . . . the jury should have been instructed to view [accomplice] testimony with distrust (CALJIC No. 3.18), we find the other instructions given—including '[a] witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others' (CALJIC No. 2.21.2), along with instructions on a witness's credibility (CALJIC No. 2.20) and the character of a witness for honesty or truthfulness or their opposites (CALJIC No. 2.24)—were sufficient to

5

inform the jury to view [the accomplice's] testimony with care and caution, in line with CALJIC No. 3.18." (*Lewis*, *supra*, 26 Cal.4th at p. 371; accord, *People v. Gonzales* (2011) 52 Cal.4th 254, 304.)

In this case, as in *Lewis*, the jury was given general instructions for evaluating witness credibility. The jury was given criteria for determining the believability of a witness, including the existence or nonexistence of a bias, interest, or other motive. The jury was specifically told that one of the factors bearing on the credibility of a witness is "whether the witness is testifying under a grant of immunity." The jury was told that a witness who was willfully false in one material part of his or her testimony should be distrusted in others. The jury was also advised that inconsistent statements on the part of a witness might be considered in determining the witness's credibility as well as the truth of the factual statement previously made. Accordingly, the trial court's failure to give CALJIC No. 3.18 was harmless because general instructions on evaluating witness credibility "were sufficient to inform the jury to view [Bracy's] testimony with care and caution, in line with CALJIC No. 3.18." (*Lewis*, *supra*, 26 Cal.4th at p. 371.)

Moreover, it is settled that the omission of instructions on the law of accomplices, including CALJIC No. 3.18, "even if erroneous, is deemed harmless where there was ample evidence corroborating the witness's testimony. [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 143; see also *People v. Sully* (1991) 53 Cal.3d 1195, 1228; *People v. Sanders* (1995) 11 Cal.4th 475, 534-535 (*Sanders*).) The requisite corroborating evidence can be entirely circumstantial. (*Zapien*, *supra*, 4 Cal.4th at p. 982.) It need only connect the defendant with the commission of the crime in such a way as to reasonably satisfy the jury that the accomplice is telling the truth. (*Sanders*, *supra*, 11 Cal.4th at p. 535.)

Here, there was sufficient corroborating evidence of the only significant portion of Bracy's testimony against appellant—that he used his cell phone to alert Smith, one of appellant's cohorts, to their rivals' presence in the church. Criminalist Mark Dobbs analyzed the relevant cell phone calls and confirmed that Smith and Bracy exchanged cell phone calls just before the shooting. Accordingly, there is no reasonable probability that

6

appellant would have received a more favorable result if the trial court had instructed the jury with CALJIC No. 3.18, and the error is therefore harmless.[3]

### C. CALJIC No. 2.11.5 Improperly Given

Although no objection was made below, appellant next claims it was error to instruct the jury with CALJIC No. 2.11.5. The court was instructed: "There has been evidence in this case indicating that a person or persons other than the defendant was or may have been involved in the crime for which the defendant is on trial. There may be many reasons why that person is not here on trial. Therefore, do not speculate or guess as to why the other person is not being prosecuted in this trial or whether he has been or will be prosecuted. Your sole duty is to decide whether the People have pro[v]ed the guilt of the defendant on trial."

CALJIC No. 2.11.5 applies to people who may have been involved in the crime, whether or not they qualify as accomplices. (*People v. Williams* (1997) 16 Cal.4th 153, 226 (*Williams*).) "The purpose of the challenged instruction is to discourage the jury from irrelevant speculation about the prosecution's reasons for not jointly prosecuting all those shown by the evidence to have participated in the perpetration of the charged offenses, and also to discourage speculation about the eventual fates of unjoined perpetrators. [Citation.]" (*People v. Price* (1991) 1 Cal.4th 324, 446.) Another purpose for the instruction "is to focus the jury's attention on an individualized evaluation of the evidence against the person on trial without extraneous concern for the fate of other participants irrespective of their culpability. [Citations.]" (*People v. Cox* (1991) 53 Cal.3d 618, 668, fn. omitted.)

However, our Supreme Court has repeatedly held CALJIC No. 2.11.5 should not be given when a possible accomplice, who is not being prosecuted, is called as a witness at trial. (See *Williams*, *supra*, 16 Cal.4th at p. 226; *People v. Hardy* (1992) 2 Cal.4th 86, 190 (*Hardy*); *People v. Carrera* (1989) 49 Cal.3d 291, 312-313 (*Carrera*); *People v.*

---

[3] Even applying the harmless error standard under *Chapman*, *supra*, 386 U.S. at page 24, we conclude beyond a reasonable doubt that any error was harmless.

*Jones* (2003) 30 Cal.4th 1084, 1113 (*Jones*).)  Giving CALJIC No. 2.11 .5 in such a case can be misleading because "[w]hen an accomplice . . . testifies, the instruction might suggest to the jury that it need not consider the factors it otherwise would employ to weigh the credibility of these witnesses, such as the circumstance that the witness has been granted immunity from prosecution in return for his or her testimony.  [Citations.]" (*People v. Cornwell* (2005) 37 Cal.4th 50, 88 (*Cornwell*), disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421; accord, *Hardy, supra,* 2 Cal.4th at p. 190 [instruction error "because it could have prevented the jury from considering the incentive the various coconspirators had to lie"].)  Thus, CALJIC No. 2.11.5 " 'should not be given when a nonprosecuted participant testifies because the jury is entitled to consider the lack of prosecution in assessing the witness's credibility.'  [Citations.]" (*Williams*, *supra*, 16 Cal.4th at p. 226.)

Even assuming CALJIC No. 2.11.5 should not have been given in this case, appellant has cited no case in which an improper CALJIC No. 2.11.5 instruction created reversible error.  (See, e.g., *Carrera*, *supra*, 49 Cal.3d at p. 313; *Jones*, *supra*, 30 Cal.4th at pp. 1113-1114; *Cornwell, supra*, 37 Cal.4th at p. 89 [error in giving CALJIC No. 2.11.5 did not implicate defendant's federal constitutional rights].)  We, too, are convinced any conceivable error was harmless.

Given the overall strength of the prosecution's case against appellant, Bracy was a minor witness, and his credibility was not a mainstay of the prosecution's case. (*Williams*, *supra*, 16 Cal.4th at p. 227.)  Furthermore, Bracy's credibility and the accuracy of his testimony was not really challenged at trial because it was strongly corroborated with the cell phone records which verified his testimony that he exchanged cell phone calls with Smith just before the shooting, alerting him to the victims' presence in the church.  Therefore, *even if* the jury did not consider all of the available factors bearing on Bracy's bias and motive to testify against appellant because of CALJIC No. 2.11.5, it would not cause us to question the overall integrity of the jury's verdict.

Furthermore, as set out earlier, the jury was given the full panoply of witness credibility instructions, including that the jury could consider "[t]he existence or

8

nonexistence of a bias, interest or other motive" for the witness's testimony. The court specifically instructed the jury that it could consider whether a witness was testifying pursuant to a grant of immunity when assessing that witness's credibility. The jurors knew that Bracy had a motive to cooperate with the prosecution, and that the prosecution had granted him use immunity in this case. By no stretch of the imagination is it reasonably probable that a result more favorable to defendant would have occurred if the court had not given the jury CALJIC No. 2.11.5. (See *People v. Hinton* (2006) 37 Cal.4th 839, 881 [jury would not have misapplied CALJIC No. 2.11.5 when they were specifically told that in assessing credibility, they could consider whether the witness was testifying under a grant of immunity].)

### D. Cumulative Error

Accepting appellant's claims that the trial court erred in failing to instruct the jury with CALJIC No. 3.18, and in giving CALJIC No. 2.11.5, we have concluded that such error was harmless under the appropriate legal standard for prejudice. We likewise conclude there was no cumulative prejudicial error requiring reversal of appellant's conviction. Our review of the record assures us that appellant received due process and a fair trial. As the California Supreme Court has stated, "A defendant is entitled to a fair trial, not a perfect one." (*People v. Mincey* (1992) 2 Cal.4th 408, 454.)

As we have noted, appellant was identified as the shooter by several eyewitnesses, two of whom knew appellant personally before Valentine's Day 2010. Cell phone records corroborated that he was at the church at the time of the shooting, despite his initial denials. By the time of trial, appellant's defense was that of mistaken identity.

Any error in omitting CALJIC No. 3.18 and the inclusion of CALJIC No. 2.11.5 was harmless by any measure, singularly or in combination. As we have pointed out, these instructional errors were fully mitigated by the giving of other, equivalent instructions relating to the jury's task of evaluating the testimony of the accomplice. Therefore, we reject appellant's claim of cumulative error.

**E. Abstract of Judgment Should be Corrected**

Appellant lastly contends the abstract of judgment incorrectly indicates the $1,000 parole revocation fine is due and payable because when the trial court pronounced appellant's sentence, it stayed the $1,000 parole revocation fine pending any violation of parole. The Attorney General acknowledges the abstract of judgment is incorrect in this respect. An appellate court may order an abstract of judgment corrected when it does not accurately reflect the oral judgment of the sentencing court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; see e.g., *People v. Avila* (1999) 75 Cal.App.4th 416, 424.) In this case, the abstract of judgment does not accurately reflect the trial court's oral pronouncement; and we will order the abstract of judgment to be corrected.

## IV.

## DISPOSITION

The judgment is modified to reflect the $1,000 parole revocation fine was stayed. The trial court is directed to prepare an amended abstract of judgment and to forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

<br>

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
HUMES, J.

10