# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0343-MR

MARLON HENSON                                            APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.                  HONORABLE KEN M. HOWARD, JUDGE
NO. 19-CR-00687

COMMONWEALTH OF KENTUCKY                       APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

The grand jury indicted Marlon Henson on one count of first-degree sodomy and one count of first-degree sexual abuse for allegedly engaging in deviate sexual intercourse with J.G., his stepdaughter, and subjecting her to sexual contact. At trial, the jury found Henson guilty on both counts and recommended concurrent sentences totaling 20 years. He now appeals the resulting judgment as a matter of right.[1] We affirm the judgment.

In his appeal, Henson alleges more than 25 errors by the trial court. Numerous arguments made in his brief are improperly preserved, inadequately

---

[1] Ky. Const. § 110(2)(b).

cited, insufficiently argued, and unsupported by statute or case law. We address those arguments that comply with CR[2] 76.12.

## I. FACTS AND PROCEDURAL HISTORY

J.G. confided to her friends and grandmother that her stepfather, Marlon Henson, had made sexual contact with her. Specifically, J.G. alleged that, on one occasion, she had fallen asleep in the bedroom of Henson and her mother when Henson put his hand under her clothing and touched her "lower private area" between her legs. On another occasion, Henson had come to J.G.'s bedroom while she was awake but lying down, pulled down her shorts, and touched and licked between her legs.

When J.G.'s mother, Joy Gray, was informed of these allegations, she contacted the Kentucky State Police. In response, Trooper Kevin Dreisbach went to Joy's location where they composed and sent on Joy's phone a series of text messages to Henson. Via return text message, Henson denied knowledge of doing anything to J.G., but he apologized if he had done so.

Afterward, Trooper Dreisbach drove to Henson's location, and Henson agreed to go with him to the post to be interviewed. Henson was released after being interviewed. Henson agreed to be interviewed by police again two days later and was again released.

The police investigated J.G.'s allegations, interviewing countless friends and relatives of both J.G. and Henson. After nearly a year of investigation, Henson was indicted.

---

[2] Kentucky Rules of Civil Procedure.

Jury selection for Henson's trial began on March 12, 2020, and the jury was sworn in on March 13. At trial, Henson denied any sexual interaction with J.G. After both parties made closing arguments, the jury deliberated for approximately 14 hours before reaching a guilty verdict on both charges and recommending a concurrent sentence totaling 20 years. The trial court sentenced Henson in accordance with this recommendation.

## II. ANALYSIS

### A. The trial court did not abuse its discretion by proceeding with Henson's trial in light of Order 2020-08 from the Kentucky Supreme Court.

Henson contends that the trial court committed reversible error in failing to grant a postponement of his trial to a later time. In the face of the threat of COVID-19, Henson alleges the members of the jury were unable to give their full attention to their duties as jurors. Additionally, he contends the language of this Court's Order No. 2020-08 mandated the trial court reschedule his trial to a later time, and that by failing to do so the trial court committed reversible error.

We review a trial court's decision on whether to postpone a trial under an abuse of discretion standard.[3] A trial court has wide discretion in deciding whether to grant a motion for continuance, and we will not overturn such a decision unless we find the trial court's decision arbitrary, unreasonable, or unsupported by sound legal principles.[4]

---

[3] *Hilton v. Commonwealth*, 539 S.W.3d 1, 7 (Ky. 2018).

[4] *Id.* at 10-11; *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Motions for a continuance are generally governed by RCr[5] 9.04, which reads: "The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial."[6] In this case, however, the trial court was also operating under Kentucky Supreme Court Administrative Order No. 2020-08. The order issued on March 12, 2020, directs, in pertinent part, that "reasonable attempts shall be made to reschedule all criminal trials . . . ."

Order No. 2020-08 imposed a standard of reasonableness upon the trial courts in deciding whether to reschedule criminal trials. It was within the trial court's discretion to find it impracticable to reschedule Henson's trial after the trial was underway. We find no abuse of discretion in the trial court's decision to swear in the jury on March 13, 2020, and proceed with trial to completion.

Henson also alleges the trial court impermissibly delegated the authority to postpone the trial to the jury when the judge consulted with the jurors regarding their ability to focus and participate in the trial. However, a trial court is entrusted with broad discretion in the way a trial is conducted.[7] Without a clear abuse of such discretion, an appellate court should not so encroach upon the purview of the trial court.[8] We refuse to do so now. We find this communication between the trial court and members of the jury was a reasonable consultation with the jurors to determine whether the threat of

---

[5] Kentucky Rules of Criminal Procedure.

[6] *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020).

[7] *Transit Auth. of River City (TARC) v. Montgomery*, 836 S.W.2d 413, 416 (Ky. 1992).

[8] *Id.*

COVID-19 posed an insurmountable distraction from participation in the trial. Upon the jurors' response that they felt prepared to participate in the trial, the court did not abuse its discretion in proceeding with the trial.

**B. The trial court did not err in closing Henson's trial to the public in response to the threat of COVID-19.**

Henson argues that the trial court denied him his right to a public trial on March 16, 18, and 19, 2020, when the court limited attendance of the trial to attorneys, parties, and necessary witnesses, in compliance with Administrative Order No. 2020-08. Henson claims that the exclusion of his family and friends from the courtroom during trial fatally prejudiced his defense.

Both the Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution guarantee a criminal defendant the right to a public trial. In *United States v. Gonzalez-Lopez*, the United States Supreme Court held that the denial of a defendant's right to a public trial was a structural error.[9] Structural errors are those affecting the entire framework of the trial and necessarily render the trial fundamentally unfair.[10] These errors are not considered under the harmless-error rule but instead require automatic reversal.[11] In reviewing whether a trial court denied a defendant's right to a public trial, we apply a presumption of prejudice if such a denial is found to have occurred.[12]

---

[9] *United States v. Gonzalez-Lopez*, 547 U.S. 140, 148-49 (2006); *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013).

[10] *Neder v. United States*, 527 U.S. 1, 8-9 (1999).

[11] *McCleery*, 410 S.W.3d at 604.

[12] *Commonwealth v. Douglas*, 553 S.W.3d 795, 799-800 (Ky. 2018).

In *Waller v. Georgia,* the United States Supreme Court outlined the test for determining if the closure of a trial constitutes a violation of the Sixth Amendment by denying the defendant's right to a public trial:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.[13]

The application of the test to the circumstances in our case is imperfect because the closure of Henson's trial was not a matter of the trial court's judicial discretion but instead a matter of the trial court's adherence to this Court's emergency administrative orders. As such, our analysis considers whether the Kentucky Supreme Court fulfilled the *Waller* test in issuing Order No. 2020-08. We consider each of the test's four elements in turn.

First, the party seeking closure of the trial must provide an "overriding interest" likely to be prejudiced if the trial is not closed.[14] The preamble to Order No. 2020-08 outlines the emergent circumstances under which the order was issued. Governor Beshear had declared Kentucky to be under a state of emergency in response to the threat of COVID-19. Public-health guidance at that time advised social distancing, masking, and quarantining as the primary means of defense from the virus. Thus, this Court found the best way to protect the health and safety of the employees of Kentucky's courts, our elected officials, and the public was the closure of courtrooms to spectators. Without

---

[13] 467 U.S. 39, 48 (1984).

[14] *Id.*

such closure, the social distancing prescribed by the Centers for Disease Control would have been impossible to maintain. With the benefit of hindsight and the immense loss of life in Kentucky as a result of COVID-19, it is clear the precautions taken were a proportionate response to the threat posed by COVID-19.

Second, the closure enacted must be narrowly tailored to the interest threatened.[15] In issuing Order No. 2020-08, this Court left to the discretion of our trial courts the decision to reschedule criminal trials underway at that time. The order sought to limit the dangers posed by COVID-19 while allowing criminal trials to proceed as each trial court saw fit. Rather than suspending proceedings altogether, this Court sought to mitigate the danger posed by COVID-19 while permitting ongoing criminal trials to proceed to resolution without interruption.

Third, the court must consider reasonable alternatives to the closure of the proceeding.[16] In issuing Order No. 2020-08, this Court found that, in March 2020, closure of the courtroom to spectators was the most feasible way to continue the work of the judiciary while protecting employees, officials, and litigants from the threat of COVID-19. At present, technologies are available that provide streaming of proceedings live to any computer or phone with access to the internet. However, Kentucky's courts were not equipped with such technology at the outset of the COVID-19 pandemic. Among the options of full closure, closure to spectators, or full access to the public, this Court

---

[15] *Id.*

[16] *Id.*

reasoned that completing criminal trials in progress while closing the courtroom to spectators was the course of action best suited to accomplish this Court's purpose of keeping courts operating while preventing the spread of COVID-19.

Lastly, the court is required to make findings adequate to support closure of the courtroom.[17]  In this case, the preamble to Order No. 2020-08 states the reasoning behind the order's issuance.  Additionally, the trial court informed the jury of Order No. 2020-08 and the reason spectators were excluded from the courtroom during the trial.  So both the trial court and this Court provided sufficient findings to support the courtroom's closure to spectators during the trial.  We find Order No. 2020-08 satisfies the elements of the *Waller* test.  Therefore, the trial court's adherence with Order No. 2020-08 did not constitute a denial of Henson's right to a public trial.

The crux of Henson's argument regarding the closure of his trial is that the jury was unable to see the many friends and family members he anticipated would attend the trial and show their support for him, and thereby the jury was unfairly prejudiced against him.  However, this theory lacks legal support.  Although the right to a public trial is "for the benefit of the accused," the guarantee of a public trial is intended to allow the public to "see for themselves how their laws are impartially applied."[18]  We find this purpose is adequately served by the availability of the digital recording of the trial to the

---

[17] *Id.*

[18] *Waller*, 467 U.S. at 46; *Lexington Herald Leader Co., Inc. v. Tackett*, 601 S.W. 905, 907 (Ky. 1980).

8

public after the conclusion of the trial, and we therefore find Henson's argument to be without merit.

## C. The trial court did not abuse its discretion in denying Henson's various motions to declare a mistrial.

A mistrial is granted at the discretion of the trial court.[19] Absent an abuse of discretion, an appellate court will not disturb the ruling of the trial court. Furthermore, a mistrial is appropriate only where the record reveals "a manifest necessity for such action or an urgent or real necessity."[20] A mistrial is an extreme remedy only appropriate when a fundamental defect occurs that will result in apparent injustice.[21] A mistrial should only be declared if prejudice can be avoided in no other way.[22]

Henson's brief cites two instances in which he requested the trial court declare a mistrial. In both instances, Henson argued that, in response to Order No. 2020-08's instruction that spectators be excluded from the courtroom, a mistrial was required. However, Henson's brief provides no citation to pertinent authority in its contention that a mistrial was merited and wrongly denied. Because Henson's brief is not in conformity with CR 76.12, we may summarily affirm the trial court on this issue.[23] Despite this deficiency,

---

[19] *Chapman v. Richardson*, 740 S.W.2d 929 (Ky.1987).

[20] *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002) (citing *Clay v. Commonwealth*, 867 S.W.2d 200, 204 (Ky. App. 1993)).

[21] *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996).

[22] *Id.*

[23] *See also* RCr 12.02 regarding the applicability of CR 76 to criminal appeals; *Harris v. Commonwealth*, 384 S.W.3d 117, 130-31 (Ky. 2012).

9

we will still address the merits of this claim as if they had been properly briefed.

As addressed above in Section B, the right to a public trial is not intended to bolster the jury's perception of the defendant and his support from the community. So the exclusion of Henson's family and friends from the courtroom during the trial did not improperly prejudice the jury against him. Henson provides no alternative grounds on which the trial court's failure to declare a mistrial would result in manifest injustice.[24] Thus, we find the trial court did not abuse its discretion in refusing to grant Henson's requests for a mistrial.

### D. The trial court did not abuse its discretion in allowing J.G., the alleged victim, and her parents to be present in the courtroom for portions of the trial.

A trial court is entrusted with broad discretion in conducting a trial, and the trial court's decisions will not be disturbed unless clearly erroneous.[25] Per the directive of Order No. 2020-08, only "attorneys, parties, and necessary witnesses" were permitted in the courtroom during the trial. In ruling that the victim and her guardians were parties to the case for this purpose, we find the trial court exercised reasonable discretion. We find the allowance of J.G., the alleged underaged victim, and her parents to remain in the courtroom during closing arguments did not unfairly prejudice Henson, and the decision of the trial court to allow J.G. and her parents to remain in the courtroom was not

---

[24] Although Henson requested the trial court declare a mistrial on several other occasions, none of those instances were addressed in his brief. Therefore, we do not consider them in our present analysis.

[25] *Furnish v. Commonwealth*, 267 S.W.3d 656, 664 (Ky. 2007).

clearly erroneous.  We therefore find Henson's arguments on this matter to be without merit.

### E. The trial court did not err in denying Henson's motions to suppress his statements made to Joy Grey and the evidence obtained therefrom.

When Henson conversed with Joy via text message during the investigation of this case, Joy was in the presence of Trooper Dreisbach. Henson alleges that, in conspiring with Dreisbach to compose messages to send to Henson, Grey became an agent of the Commonwealth.  Henson contends that, as an agent of the Commonwealth, Grey was required to administer *Miranda* warnings before conversing with him.  Because she failed to do so, Henson argues, the statements he made to Grey via text message and all the evidence the police obtained from these messages should have been suppressed.

Before we address the merits of Henson's argument, the Court finds it important to note the argument on this topic provided in Henson's brief is lacking in documentation of preservation, citation to legal authority, and analysis in general.  By proffering a novel argument and providing no reference to analogous precedent, Henson simply makes a broad statement of error and asks this Court to make his analysis for him.  Because of Henson's failure to comply with CR 76.12, this Court may summarily affirm the trial court's ruling on this matter.[26]  Despite this deficiency, we will address this argument as if it had been properly briefed.

---

[26] *Harris*, 384 S.W.3d at 130-31.

When reviewing a trial court's denial of a motion to suppress, this Court uses a clear-error standard of review for factual findings and a de-novo standard of review for conclusions of law.[27] We will consider Henson's factual contentions to determine whether the trial court committed clear error.

Henson claims that, acting at the direction of Trooper Dreisbach, Joy sent text messages to Henson. Those messages contained the false assertion that Grey possessed video evidence incriminating Henson. Testimony from both Grey and Trooper Dreisbach confirms Grey text messaged Henson at the direction of Trooper Dreisbach and the messages contained this false assertion. As the factual findings that form the basis of Henson's motion for suppression are not in dispute, the trial court's acceptance of these facts was not erroneous.

We review de novo the legal conclusions formed by the trial court regarding Henson's suppression motion. The trial court properly concluded that using deceptive investigatory techniques is legal. Thus, it would be permissible for Trooper Dreisbach to use deceptive techniques to question Henson. By extension, the trial court reasoned, an agent of Trooper Dreisbach could do the same. We agree. Under both Kentucky and United States Supreme Court precedent, the use of deceptive interrogation practices does not automatically render a statement involuntary.[28] Instead, the courts consider

---

[27] *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006).

[28] *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Matthews v. Commonwealth*, 168 S.W.3d 14, 21 (Ky. 2005).

the totality of the circumstances under which a statement is made to determine if it was the product of coercion and, as such, inadmissible.[29]

Given the totality of the circumstances surrounding Henson's text messages with Grey, we find the deception that occurred did not rise to the level of coercion necessary to render Henson's statements inadmissible. Therefore, the trial court properly dismissed Henson's motion to have such statements suppressed.

### F. The trial court did not err in denying Henson's motion to suppress his statements to police.

Before trial, Henson filed a motion seeking the suppression both of his text message conversation with Grey (see Section E) as well as the statements he made to police "on or about" October 22, 2018, and any time thereafter. Henson claimed that his statement to police on October 22, 2018, was made during a custodial interrogation at which he had not been provided his *Miranda* rights. As such, he argued the statements were made involuntarily and thus suppression was required.

At a pre-trial suppression hearing, the trial court conducted an exhaustive analysis of both the undisputed facts as well as the relevant legal precedent, concluding Henson was not in custody during either of his interviews with police. As a result, Henson was not entitled to receive *Miranda* warnings. The trial court denied Henson's pretrial motion for suppression. Henson renewed his motion for suppression at trial, where it was denied on the same grounds as his pretrial motion.

---

[29] *Matthews*, 168 S.W.3d at 21 (citing *Illinois v. Perkins*, 296 U.S. 292, 297 (1990)).

In reviewing a trial court's denial of a motion to suppress, this Court applies a clear-error standard to the trial court's factual findings.[30] The trial court conducted an evidentiary hearing at which the officers who interviewed Henson testified. The trial court also considered the transcripts of Henson's interviews with police in reviewing Henson's motion to suppress the statements elicited in the interviews. Henson's motion contained no objection to the facts presented, and thus we find the essential facts that form the basis of his argument are not in dispute. Therefore, we find the trial court's acceptance of these facts as true was not erroneous.

In reviewing a trial court's denial of a motion to suppress, we consider the trial court's legal conclusions de novo.[31] Under *Miranda v. Arizona*, law enforcement officers are required to advise a suspect of the right to remain silent and the right to the assistance of legal counsel before performing a custodial interrogation.[32] In order to determine if a suspect was subjected to a custodial interrogation, the court must consider both whether the suspect was in police custody and whether the suspect was interrogated.[33]

In determining whether a suspect was in police custody, we consider the totality of the circumstances surrounding the interaction.[34] A suspect is in custody if he has formally been placed under arrest or if his movements have been restrained to the degree a reasonable person would equate with being

---

[30] *Jackson*, 187 S.W.3d at 305.

[31] *Id.*

[32] 384 U.S. 436, 471-72 (1966).

[33] *Smith v. Commonwealth*, 520 S.W.3d 340, 346 (Ky. 2017).

[34] *Wilson v. Commonwealth*, 199 S.W.3d 175, 180 (Ky. 2006).

14

formally placed under arrest.[35] Custody indicates that the suspect's statements are at risk of being coerced.[36] In analyzing whether a suspect is in custody, we consider the following factors: the purpose of the questioning; the location of the questioning; the behavior of the officers; the display of a weapon by the officers; the length of the interview; the officers' tone and language; the officers' notification to the suspect that he was free to leave; and any other indications of coercion.[37]

In this case, the trial court found that a reasonable person in Henson's position would have felt free to terminate the interview at any time. Henson willingly traveled to the state police post to be interviewed by the officers, the officers notified him of his right to leave, and, in the case of the second interview, Henson exercised that right to terminate the interview and leave. The officers spoke calmly and unthreateningly to Henson throughout his interviews.

We find, under the totality of the circumstances, Henson was not in police custody for purposes of *Miranda*, his statements made to police were voluntarily made, and those statements were admissible into evidence. The trial court did not err in denying Henson's motion to suppress these statements from evidence.

---

[35] *Stansbury v. California*, 511 U.S. 318, 320 (1994); *Jackson v. Commonwealth*, 187 S.W.3d 300, 310 (Ky. 2006).

[36] *Howes v. Fields*, 565 U.S. 499, 508 (2012).

[37] *Smith*, 312 S.W.3d at 358.

## G. The trial court did not err in refusing to admit the testimony of Miley Rogers into evidence.

Henson makes a fleeting argument that the trial court erred by refusing to admit portions of the testimony of Miley Rogers into evidence. He alleges this evidence was placed in the record by avowal. However, Henson does not identify which exhibit contains this evidence, nor does he accurately cite to relevant portions of the record. Last, Henson makes no argument regarding the substance of the excluded testimony or the impact that testimony would have had on his defense. Henson again simply makes a claim of error and expects this Court to construct an argument for him. We decline to do so. Because Henson's brief is deficient under CR 76.12 with regard to this argument, we decline to consider his claim of error and instead summarily affirm the decision of the trial court.

## H. The trial court did not abuse its discretion in refusing to admit the entire text-message exchange between Sybil Humphrey and Vicky Basham into evidence.

At trial, Henson called Sybil Humphrey as a witness. During both Humphrey's testimony and the testimony of other witnesses, Henson attempted to introduce records of Humphrey's text-message exchanges as impeachment evidence to prove that J.G. had ulterior motives in her allegations against Henson. The Commonwealth objected to the use of the messages because they contained inadmissible hearsay. The trial court did not permit the messages containing hearsay to be presented to the jury. Additionally, the trial court required the hearsay portions of the messages to be redacted before the messages were submitted as an exhibit to the jury.

16

Under CR 76.12, Henson's brief is substantively and structurally deficient with regard to this argument. Henson provides no citation to any precedent or rule of evidence in support of his argument.[38] Despite this deficiency, we will address Henson's argument as if it had been properly briefed.

A court's refusal to admit testimony into evidence is an evidentiary ruling that we review for abuse of discretion.[39] We will disturb the trial court's decision only if we find the decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[40]

This Court assumes the legal principle on which Henson's argument is founded is KRE[41] 106, the Rule of Completeness: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The goal of this rule is to ensure statements admitted into evidence are fully understandable and clear.[42]

---

[38] Henson's argument on this topic also contains a disparate paragraph regarding a *Barroso* motion that seems to be mistakenly placed within this section. This argument is not contained in the brief's Statement of Points and Authorities, the argument is both substantively and structurally deficient, and Henson fails to correctly spell the name Barroso or cite to the relevant case. Thus, we decline to entertain this argument.

[39] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

[40] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[41] Kentucky Rule of Evidence.

[42] *James v. Commonwealth*, 369 S.W.189, 205 (Ky. 2012).

In determining fairness in the context of an alleged violation of the rule of completeness, the issue is whether the meaning of the included portion of the evidence is altered by the excluded portion.[43] At trial, the party seeking to invoke KRE 106 must provide an explanation to the trial court of how the statements admitted would be understood differently in the context of those statements not admitted.[44]

Neither at trial nor in briefing did Henson explain how any statement admitted from Sybil Humphrey's text messages was taken out of context or plucked from the conversation as a whole such that it misled the jury as to its meaning. The statements admitted into evidence were expressions of concern that Henson may have been wrongly accused. The portion of the conversation the trial court ruled to be hearsay expressed how Basham "got told" that J.G. made false allegations because she did not want to live with Henson any longer. The omission of this hearsay from evidence does not alter the meaning of the portion of the conversation admitted into evidence. Therefore, we find the trial court did not abuse its discretion in refusing to admit the entirety of the text message conversation at hand.

## I. The trial court did not abuse its discretion in interpreting and applying the trial court's reciprocal-discovery order.

Before trial, the court granted Henson's motion for a discovery order requiring the Commonwealth to provide any exculpating evidence to him as well as any evidence the Commonwealth intended to introduce at trial. Under

---

[43] *Sykes v. Commonwealth*, 453 S.W.3d 722, 726 (Ky. 2015).

[44] *Meece v. Commonwealth*, 348 S.W.3d 627, 671 (Ky. 2011).

18

RCr 7.24(3)(b), if such a request by a defendant is granted, the court may order that the defendant similarly disclose to the Commonwealth evidence intended to be introduced at trial.

Before the trial began, Henson made no objection to these orders. At trial, however, Henson attempted to introduce into evidence a text message conversation between Sybil Humphrey and Vicky Basham. The Commonwealth objected to the introduction of such evidence claiming it had not previously been disclosed to the Commonwealth, per the instruction of the trial court's reciprocal-discovery agreement. The Commonwealth argued that Henson should have reasonably anticipated that this text-message conversation would come into evidence for impeachment purposes, and thus he had a duty to disclose the evidence to the Commonwealth before trial.

While acknowledging the validity of the Commonwealth's objection, the trial court chose not to exclude the evidence in question because of the violation of the order but instead required Henson to disclose the evidence to the Commonwealth at that time. Despite this late disclosure, the trial court permitted Henson to introduce the text-message conversation into evidence.[45]

In reviewing a trial court's interpretation and application of a discovery order, this Court will find error only if the trial court abused its discretion in interpreting the order.[46] Thus, we will not overturn the decision of the trial

---

[45] Portions of the text message conversation in question were ultimately excluded from evidence on hearsay grounds. However, this exclusion was unrelated to Henson's failure to make proper disclosure of the evidence to the Commonwealth prior to trial.

[46] *Southern Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 931 (Ky. 2013).

19

court unless we find it to be unreasonable, unfair, arbitrary, or unsupported by sound legal principles.[47]  Generally speaking, trial courts are granted broad leeway and discretion in entering and enforcing their discovery orders.[48]

Henson's argument regarding this issue confounds this Court. Henson sought to have the text-message conversation entered into evidence.  The trial court permitted the text-message conversation to be entered into evidence, despite acknowledging Henson's violation of the reciprocal-discovery order.  Henson was hardly prejudiced by the trial court's requirement that he provide the text-message conversation to the Commonwealth once the trial had already begun.  Most importantly, the video record cited by Henson to show preservation of this issue includes footage of Henson withdrawing his objection.  We find his argument on this topic to be entirely without merit.[49]  The trial court did not abuse its discretion in enforcement of the reciprocal-discovery order.

**J. The trial court did not abuse its discretion in refusing to allow hearsay to be included in Trooper Dreisbach's testimony at trial.**

Before trial, Trooper Dreisbach interviewed four of J.G.'s friends regarding what she had told them about the alleged sexual assault.  At trial, Henson called Trooper Dreisbach as a witness.  Specifically, Henson inquired as to the statements made by J.G.'s friends whom Trooper Dreisbach

---

[47] *English*, 993 S.W.2d at 945.

[48] *Id.*

[49] In addition to the incoherence of Henson's argument, the section of his brief on this topic is deficient under of CR 76.12, lacking citation to legal precedent, a factual premise for his argument, and any allegation of prejudice created by the trial court's actions.

interviewed. The Commonwealth objected to Trooper Dreisbach's testimony regarding the contents of those conversations as inadmissible hearsay.

In response to the objection, Henson argued that the Commonwealth had failed to aid him in locating the four friends of J.G. and thus that he was entitled to inquire about the content of their statements made to Trooper Dreisbach. The trial court sustained the Commonwealth's objection, prohibiting Trooper Dreisbach from testifying about the statements made to him by J.G.'s four friends.

A trial court's decision to refuse to admit testimony is an evidentiary ruling that this Court reviews under an abuse-of-discretion standard.[50] We will disturb the trial court's ruling only if we find it to be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[51]

Under KRE 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted."[52] In this case, statements made by J.G.'s friends in interviews with Trooper Dreisbach were certainly out-of-court statements made by one other than Trooper Dreisbach. In fact, because the friends' statements were regarding what J.G. had told them, the statements were hearsay within hearsay.

We first address Henson's contention that the Commonwealth failed to help him locate witnesses before trial. Henson claims that he requested the aid

---

[50] *Goodyear Tire & Rubber Co.*, 11 S.W.3d at 577.

[51] *English*, 993 S.W.2d at 945.

[52] KRE 801(c).

of the Commonwealth by letter. But this letter is not included as an appendix to Henson's brief, nor is a citation to the trial record provided. Henson has not properly preserved the argument that the declarant was unavailable to testify at trial, meriting an exception to KRE 802's rule against hearsay, so we decline to address it.

Henson claims he attempted to introduce these statements into evidence as prior inconsistent statements to impeach the testimony of J.G., the victim of the alleged crimes. If J.G.'s friends themselves were called to testify to J.G.'s prior inconsistent statements, such hearsay could be permitted in evidence under KRE 801A provided that a proper foundation were laid.[53] But because no hearsay exception applies to Trooper Dreisbach's testimony, it was properly excluded under KRE 802. So we find the trial court did not abuse its discretion in ruling that Trooper Dreisbach's testimony regarding the interviews of J.G.'s friends was inadmissible hearsay.

### K. The trial court did not abuse its discretion in denying Henson's motion to limit the scope of the Commonwealth's cross-examination of Henson's character witnesses.

On the second day of trial, Henson filed a motion with the court requesting that the scope of cross examination of his character witnesses be

---

[53] The Commonwealth succinctly and accurately outlines the series of events that would have been required to find Trooper Dreisbach's hearsay-within-hearsay testimony admissible:

> J.G.'s out-of-court statements to her friends would have been admissible under KRE 801[A](a)(1), had she testified inconsistently at trial. However, under KRS 613(a), Henson had to first confront J.G. with her alleged prior inconsistent statements. If J.G. denied making the statements, Henson could have called J.G.'s friends to testify as to what J.G. had earlier told them. Only if J.G.'s friends denied that J.G. had made the statements, could Henson call Trooper Dreisbach to testify as to what J.G.'s friends had told him.

preemptively limited to Henson's reputation for honesty and veracity. The trial court denied the motion, explaining that the scope of cross-examination is determined by the testimony of Henson's witnesses on direct examination and limited to those traits or characteristics raised during direct examination.

The scope of cross examination falls squarely within the sound discretion of the trial court.[54] So we review the court's ruling on a motion to limit the scope of cross examination under an abuse of discretion standard.[55] Under KRE 404(a)(1), the Commonwealth may only offer evidence of the defendant's bad character in rebuttal of evidence of the defendant's good character offered by the defense. However, the evidence that may be offered by the Commonwealth is limited in scope to that which rebuts the good character trait proffered by the defendant.

In this case, the trial court properly stated that the scope of permissible cross examination is determined by the testimony given by the witness on direct examination and not by counsel's questions on direct examination. Thus, the trial court properly declined to preemptively limit the scope of cross-examination before the witness has testified on direct. We find that the trial court did not abuse its discretion in refusing to grant Henson's motion to limit the scope of the Commonwealth's cross-examination.

---

[54] *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997).

[55] *Baker v. Kammerer*, 187 S.W.3d 292, 297 (Ky. 2006).

**L. The trial court's admonition to the jury cured any prejudice that may have been created by the Commonwealth's misstatement about the findings of Henson's domestic-violence hearing.[56]**

During the Commonwealth's cross-examination of Henson, the Commonwealth mentioned a previous domestic-violence order that had been entered against Henson for sexual abuse. Henson objected, stating that the domestic-violence order was not entered upon a finding of sexual abuse. The trial court sustained his objection and admonished the jury to disregard the Commonwealth's statement that the domestic-violence order was issued upon a finding of sexual abuse. Henson now argues, without citation to binding authority, that the trial court's admonition did not cure the error and the jury was improperly prejudiced against him.

The decision to give an admonition to the jury is an evidentiary ruling that we review under an abuse-of-discretion standard.[57] We will disturb the trial court's decision only if it is arbitrary, unfair, unreasonable, or unsupported by sound legal principles.

A jury is presumed to follow a curative admonition and thus such an admonition cures any error.[58] The presumption of an admonition's curative effect is overcome only by showing that there is either an "overwhelming probability that the jury will be unable to follow the admonition and there is a

---

[56] In this section of Henson's brief, he also raises arguments concerning allegedly improper evidence regarding Child Protective Services, the existence of an allegedly incriminating note found in J.G.'s backpack, and the spoliation of evidence. Because none of these arguments are included in Henson's Statement of Points and Authorities nor are they sufficiently briefed in compliance with CR 76.12, we decline to address them here.

[57] *Goodyear Tire & Rubber Co.*, 11 S.W.3d at 577.

[58] *Carson v. Commonwealth*, 621 S.W.3d 443, 450 (Ky. 2021).

strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant" or that the question was highly prejudicial or inflammatory and lacked any factual basis.[59]

In this case, upon Henson's request, the trial court gave the jury an admonition. The jury was told to disregard the Commonwealth's question as it related to a domestic-violence order entered upon a finding of sexual abuse. Henson did not object to the language of the admonition, nor did he request that the trial court declare a mistrial. Given the curative presumption of the admonition and Henson's failure to preserve any other objection, we find that the trial court did not abuse its discretion in admonishing the jury in order to cure any error created by the Commonwealth's mischaracterization of this evidence.

### M. The trial court did not abuse its discretion in overruling Henson's objections to admission of images of a "kegerator" into evidence.

At trial, the Commonwealth introduced into evidence a series of photographs taken at the home where J.G. and Henson resided at the time of the alleged crimes. Two of those photographs depicted a kegerator—a small refrigerator that holds a keg from which beer can be dispensed. The photographs were authenticated by Joy, and she stated that she did not know when the photographs were taken. Henson did not allege that the photographs inaccurately represented the rooms and items they depicted. While on the stand, Trooper Dreisbach testified that he took the photographs during his

---

[59] *Id.* (citing *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003)); *Johnson*, 105 S.W.3d at 441.

investigation. Henson did not dispute the presence of the kegerator in the home.

The determination of the sufficiency of the authentication of evidence is within the discretion of the trial court.[60] We review the trial court's determination of the authenticity of evidence for abuse of discretion.[61] Generally, the foundational authenticity of a photograph can be laid by testimonial verification of its fair and accurate portrayal of that which it is supposed to represent.[62] It is unnecessary for the witness testifying as to the authenticity of a photograph to be the photographer, nor does he or she need to have personal knowledge of the time when the photograph was taken.[63]

Henson's brief is critically deficient on this argument. First and foremost, he makes insufficient reference to the record documenting where this argument is preserved. Henson's reference to "Post Trial Motions ROA 133-162" does not constitute a citation to the record sufficient to inform this Court of the location of his properly preserved arguments. CR 76.12 requires that an appellant's argument begin with a statement of preservation "with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." A reference to Henson's post-trial motions is not such a reference. Although this argument may have been preserved by objection at

---

[60] *Braufman v. Commonwealth*, 612 S.W.3d 850, 866 (Ky. 2020).

[61] *Johnson v. Commonwealth*, 134 S.W.3d 563, 566 (Ky. 2004).

[62] KRE 901; R. Lawson, The Kentucky Evidence Law Handbook § 11.05, at 599 (3d ed. Michie 1993).

[63] *Litton v. Commonwealth*, 597 S.W.2d 616, 618-19 (Ky. 1980).

trial, that objection is not cited in Henson's statement of preservation as mandated by CR 76.12.

Second, within Henson's argument, the facts asserted do not align with the citations made to the trial record. Additionally, he does not state with specificity those exhibits with which he takes issue. This Court will not search the trial record for verification of Henson's asserted facts. This Court has made clear that it "will not sift through a voluminous record to try to ascertain facts when a party has failed to comply with its obligation under [the] Kentucky Rules of Civil Procedure . . . to provide specific references to the record."[64]

Third, Henson's argument on this topic is not founded on sound legal principles. His argument makes no citation to either binding or persuasive legal precedent. Instead, he simply claims the evidence admitted was "highly prejudicial," though he provides no legal foundation for claiming that the trial court erred in admitting the evidence. Henson's threadbare and inaccurate recitation of facts does not form an intelligible argument, and we refuse to craft one for him.

Due to the incoherence and deficiency of Henson's argument on this matter, we summarily affirm the ruling of the trial court that the photos were sufficiently authenticated and properly admitted into evidence.

### N. The trial court did not abuse its discretion in refusing to instruct the jury on attempted sodomy or voluntary intoxication.

Upon conclusion of the evidence, Henson requested that the trial court instruct the jury on voluntary intoxication and attempted sodomy. The trial

---

[64] *Parker v. Commonwealth*, 291 S.W.3d 647, 676 (Ky. 2009).

court denied this request, instead instructing the jury on first-degree sodomy and first-degree sexual abuse as charged in the indictment. Henson now contends that the trial court erred in denying his proposed instructions.

A trial court's decision to instruct the jury on a specific claim is reviewed for abuse of discretion.[65] We will disturb the trial court's decision only if we find it to be unfair, unreasonable, arbitrary, or unsupported by sound legal principles.

A trial judge has a duty to instruct the jury on "the whole law of the case," which includes instructions that might apply to every state of the case supported to any extent by the testimony provided.[66] But the duty to instruct the jury on lesser-included offenses, like attempted sodomy, does not extend past the evidentiary foundation laid at trial.[67] In determining which issues should be submitted to the jury, the trial court should take into account the totality of the circumstances.[68]

In this case, it was within the trial court's discretion to determine that the evidence presented at trial could not support a reasonable inference that Henson could be guilty of attempted sodomy. As Henson produces no legal basis in support of his position, nor does he provide specific facts that he alleges support an instruction on attempted sodomy, we find that the trial

---

[65] *Herp v. Commonwealth*, 491 S.W.3d 507, 512 (Ky. 2016).

[66] *Williams v. Commonwealth*, 208 S.W.3d 881, 883 (Ky. 2006).

[67] *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998).

[68] *Commonwealth v. Collins*, 821 S.W.2d 488, 491 (Ky. 1991).

court did not abuse its discretion in refusing to instruct the jury on attempted sodomy.

Similarly, the trial court did not err in refusing to instruct the jury on voluntary intoxication. Neither first-degree sodomy nor first-degree sexual abuse has a requisite intent element.[69] There is no mental state required for the commission of these crimes. As a result, this Court has held that voluntary intoxication is not a defense to sodomy.[70] Because there is no requisite intent, we find, on the same grounds, that voluntary intoxication is not a defense to sexual abuse. Therefore, the trial court did not abuse its discretion in refusing to instruct the jury on the defense of voluntary intoxication.

### O. The trial court did not err in overruling Henson's Motion for a Directed Verdict of Acquittal.

At the end of the Commonwealth's case-in-chief, Henson moved for a directed verdict of acquittal, arguing that the Commonwealth had produced insufficient evidence to support a guilty verdict on the counts with which he was charged. In support of this position, Henson stated that there was no evidence of his sexual gratification; that his statements to police were improperly admitted into evidence; that there was no evidence of penetration provided; and that no evidence was provided to corroborate J.G.'s accusations against him. Upon the Commonwealth's refutation of each of these arguments, the trial court denied Henson's motion for a directed verdict of acquittal.

---

[69] *See* KRS 510.070; KRS 510.110.

[70] *Malone v. Commonwealth,* 636 S.W.2d 647, 648 (Ky. 1982).

In reviewing a trial court's denial of a motion for a directed verdict, we consider whether, under the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty of the offenses charged. Only upon such a finding can we conclude that an appellant was entitled to a directed verdict of acquittal.[71] We construe all evidence in the light most favorable to the Commonwealth, the non-moving party.[72]

Several of the grounds on which Henson moved for a directed verdict are clearly without merit. First, he contends that no evidence was provided that he intended to receive sexual gratification from touching J.G. However, intent may be inferred from the defendant's actions and the circumstances surrounding those actions.[73] Additionally, the jury is permitted broad latitude in inferring intent of the defendant from the evidence presented.[74] Second, Henson alleges that the Commonwealth's case is inadequate because no evidence was offered that he penetrated the victim. However, this Court has long held that penetration is not a necessary element to the crime of sodomy.[75] Last, Henson alleges that, without corroboration, J.G.'s accusation against him is not sufficient evidence under which a jury could convict him. We disagree. It is within the purview of the jury to weigh J.G.'s accusations and determine her credibility.[76]

---

[71] *Commonwealth v. Fletcher*, 59 S.W.3d 920, 921 (Ky. 2001).

[72] *Jones*, 283 S.W.3d at 668.

[73] *Edmondson v. Commonwealth*, 526 S.W.3d 78, 87 (Ky. 2017) (quoting *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988)).

[74] *Id.*

[75] *Hulan v. Commonwealth*, 634 S.W.2d 410 (Ky. 1982).

[76] *Commonwealth v. Cox*, 837 S.W.2d 898, 900 (Ky. 1992).

The grounds on which Henson's motion for a directed verdict rest are insufficient. Henson understands neither the law nor the role of the jury. The Commonwealth presented sufficient evidence in its case in chief under which a reasonable jury could find the elements of first-degree sexual abuse and first-degree sodomy to have been met. As such, we find that the trial court did not err in denying Henson's motion for a directed verdict of acquittal.

**P. The trial court did not err in giving an *Allen* charge to the jury in response to their note at 9:05 p.m.**

At 10:50 a.m. on March 18, 2020, the parties completed their closing arguments, and the jury began deliberations. At 9:05 p.m., the jury sent a note to the trial court judge, reading, "Q: We are [at] a hung jury (11-1) and the final juror says there is not anymore evidence that can swing them one way or another? Do we continue to deliberate?" The trial court ordered the jury to return to the courtroom where he read them an *Allen* charge.[77] The charge given by the judge was taken verbatim from RCr 9.57. The judge then ordered the jurors to return to the jury room to continue deliberations.

In reviewing the trial court's provision of an *Allen* charge to the jury, we consider whether, under the totality of the circumstances, the charge coerced the jury to come to an agreement.[78] The U.S. Supreme Court has held that there is no error in providing such an instruction to the jury in an effort to prevent a hung jury.[79]

---

[77] *Allen v. United States*, 164 U.S. 492, 501 (1896).

[78] *Gray v. Commonwealth*, 480 S.W.3d 253, 272 (Ky. 2016).

[79] *Allen*, 164 U.S. at 501.

In this case, in the face of a deadlocked jury, the trial court did precisely what this Court has instructed trial courts to do under RCr 9.57(1).[80]  Careful review of the trial court record reveals no evidence of coercion in the court's instruction to the jury.  In the absence of other coercive factors, we decline to find an abuse of discretion to have occurred when the trial court followed this Court's explicit instructions.

Henson also contends that the trial court's provision of an *Allen* charge was improper because the trial court was aware of the vote count among the jurors at that time.  Although under RCr 9.57(2) the trial court is not permitted to poll the jury during its deliberations, in this case, the foreperson voluntarily revealed the numerical division of the jurors without prompting from the trial court.  This information was volunteered to the trial court, outside the presence of the other jurors, and we do not find that such a revelation had a coercive effect on the jury.

Upon receiving the unsolicited poll of the jury, Henson requested that the poll be shared with the parties.  The trial court denied this request.  Henson now claims that this constitutes a grievous error, but he fails to cite any rule or precedent under which he is entitled to this information.  Both Henson and the Commonwealth were denied this information, and we find that such a denial neither prejudiced Henson nor constituted error on the part of the trial court.

In his brief, Henson argues extensively about the impropriety of a trial court providing a jury with multiple *Allen* charges.  This argument lacks merit

---

[80] *Commonwealth v. Mitchell*, 943 S.W.2d 625, 627 (Ky. 1997).

on several grounds. Primarily, the trial court in this case only offered one *Allen* charge to the jury. Further, Henson clearly and consistently misunderstands the distinction between mandatory, binding authority and those authorities that are merely persuasive to this Court. Henson's brief makes many citations to the Ninth Circuit Court of Appeals and its rule that repetition of an *Allen* charge to a deadlocked jury constitutes reversible error. However, he fails to recognize that the Ninth Circuit is the *only* circuit that has adopted such a rule. Because this issue is not factually before us today, we decline to take a position on it.

Lastly, Henson contends that provision of an *Allen* charge to a jury with a single "holdout" juror is necessarily coercive. He cites to the Ninth Circuit Court of Appeals' rule that when the trial court inquires into the numerical division of the jurors and then provides them an *Allen* charge, the charge is per se coercive and requires reversal. We decline to adopt such a rule. Instead, we consider the totality of the circumstances in determining whether the trial court coerced the jury into coming to a verdict.

After careful consideration of the totality of the circumstances, we find that the trial court's 9:05 p.m. *Allen* charge to the jury was not coercive and thus the trial court did not err in providing such an instruction.

## Q. The trial court did not err in communicating with the jury at 12:11 a.m.

After the 9:05 p.m. *Allen* charge was delivered, the jury continued to deliberate until approximately 12:11 a.m. when the judge sent a note to the jury, reading, "Jurors, Do you believe continued deliberations would be productive to reach a verdict? If yes, do you want to continue to deliberate

33

tonight or break until later on Thursday?  If you take a break, I will make arrangements for each of you to stay in a hotel tonight." Henson consented to the judge's sending this note to the jury while the Commonwealth objected.  At 1:08 a.m., the jury returned to the courtroom and announced its verdict— Henson was guilty of both first-degree sodomy and first-degree sexual abuse.

Henson now contends that the trial court's note to the jury was coercive and inappropriate.  In determining whether the actions of a trial court were coercive to the jury, we consider whether the instruction provided forced an agreement on a verdict or whether it simply forced deliberation which resulted in an agreement.[81]

Before communicating with the jury, the trial court consulted the parties regarding whether they wanted the jury to continue deliberating through the night or to break until the next day. Henson recommended that the judge interrupt the jury and send them his note. With this statement, Henson waived any objection to the trial court's communication with the jury, instead inviting this supposed error. As this potential error was invited by Henson, it is not subject to appellate review, and we decline to address it any further.

### III. CONCLUSION

For the reasons stated, we affirm the judgment.

All sitting.  All concur.

---

[81] *Bell v. Commonwealth*, 245 S.W.3d 738, 742 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008).

COUNSEL FOR APPELLANT:

Dwight Preston
Lewis & Preston, PLLC


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Office of the Solicitor General